IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL ACTION |
| v. | : NO. 01-274-1 |
| | : |
| RONALD T. BOGLIN | : |

**MEMORANDUM**

**SURRICK, J.**                                                                 **MARCH 2, 2021**

      Ronald T. Boglin is currently serving a 180-month sentence for possession of a firearm by a convicted felon. He seeks a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF Nos. 51, 61.) Boglin argues that he suffers from medical conditions that place him at a high risk of severe illness or death if he contracts COVID-19. He also contends that his rehabilitation while incarcerated, including participating in drug education programs, counsels in favor of release. For the following reasons, Boglin's motion will be denied.

**I.     BACKGROUND**

      On May 17, 2001, a federal grand jury indicted Boglin with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The charge stemmed from a brutally violent incident. On October 29, 2000, Philadelphia Police responded to Misericordia Hospital in Philadelphia. (Presentence Report ("PSR") ¶ 8 (on file with Court).) The hospital had reported that Boglin's eight-week old son had been brought into the hospital with extensive bruises on his left leg, eye, stomach, and chest, along with a small wound. (*Id.*) The child was declared dead shortly after arrival. (*Id.*) An autopsy performed on the infant revealed that the child had been beaten and shaken to death. (*Id.*) Boglin admitted to Philadelphia Police that he shook the child because he was crying. (*Id.*) As a result, police

executed a search warrant on Boglin's residence and found a 9mm handgun and accompanying magazine under a mattress in the front room. (*Id.*) Police interviewed Boglin's girlfriend who was the mother of his child. (*Id.* ¶ 9.) She informed police that before the incident with their child, Boglin had shown her the gun and placed it under their mattress in the living room, where the couple was sleeping. (*Id.*) On October 5, 2001, Boglin entered a plea of guilty to murder in state court. On November 30, 2001, he was sentenced to ten to twenty years in prison.

On October 12, 2001, Boglin entered a plea of guilty to the instant firearm charge. (ECF No. 19.) On July 24, 2002, he was sentenced to 180 months in prison and three years of supervised release. (ECF Nos. 23, 24.) Boglin faced a maximum term of life in prison, a mandatory term of 180 months' imprisonment, and a guideline range of 180 to 210 months. (PSR ¶¶ 70-71.) The guideline range was based, in part, on the fact that Boglin was an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 for three prior drug felony convictions.[1] (*Id.* ¶¶ 3, 20.) In addition to the drug crimes, Boglin was convicted for retail theft that occurred in April 1998 (*id.* ¶ 28), theft by receiving stolen property in June 1998 (*id.* ¶ 29), unauthorized use of automobiles in November 1998 (*id.* ¶ 30), and bad checks in November 1999 (*id.* ¶ 31).

Boglin is 50 years old. He is currently serving his sentence at FCI Hazelton with an anticipated release date of November 25, 2024. Factoring in good time credit of approximately

---

[1] On October 25, 1994, Boglin entered a plea of guilty to two separate drug charges. Boglin pled guilty to the manufacture, delivery, possession with intent to deliver controlled substance (possession of 14 bags of cocaine) on April 21, 1989. (PSR ¶ 25.) He was sentenced to one to two years in prison on November 10, 1994. (*Id.*) The same day, Boglin entered a plea of guilty to the manufacture, delivery, possession with intent to deliver a controlled substance (8 vials of cocaine base "crack") on April 21, 1993. (*Id.* ¶ 26.) On November 10, 1994, he was sentenced to one to two years' imprisonment. (*Id.*) Also on October 25, 1994, Boglin entered a plea of *nolo contendre* to the manufacture, delivery, possession with intent to deliver a controlled substance (10 vials of the cocaine base "crack") on June 1, 1993. (*Id.* ¶ 27.) On November 10, 1994, he was sentenced to one to two years in prison. (*Id.*)

13 months, he has served 127 months (70%) of his 180-month sentence. Boglin has received nine disciplinary infractions while in custody, including three incidents of fighting and/or assault, the most recent of which was in January 2019.

Boglin seeks to have his prison sentence reduced to time served under 18 U.S.C. § 3582(c)(1)(A). He suggests that his supervised release include a GPS monitor that would track his movements upon release. He argues that extraordinary and compelling reasons justify release because his underlying health conditions place him at an increased risk of severe illness or death were he to contract COVID-19. He also argues that there are active cases of COVID-19 at FCI Hazelton and that despite BOP's efforts to minimize the spread of the virus, the close living conditions create a high risk of exposure. Boglin also argues that his incarceration has already fulfilled the purpose of the § 3553(a) factors when taking into account his participation in drug treatment programs and other educational programs. The Government opposes the Motion.

## II.    DISCUSSION

### A.    Applicable Law

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies. In relevant part, § 3582(c)(1) provides that a court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[2]

The phrase "extraordinary and compelling reasons" is not defined by the statute, but instead incorporates the commentary to the policy statement contained in § 1B1.13 of the United States Sentencing Guidelines. *See United States v. Handerhan*, 789 F. App'x 924, 925 (3d Cir. 2019) (citing *United States v. Barberena*, 694 F.3d 514, 521 n.10 (3d Cir. 2012). Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides four categories of reasons that qualify as extraordinary and compelling: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; or (4) "other reasons" to be determined by the Director of the Bureau of Prisons ("BOP"). As a result of amendments to § 3582(c)(1)(A) by the First Step Act, courts now conclude that the catch-all category of "other reasons" applies not only to the BOP Director, but also to courts. *See United States v. Towel*, No. 17-519-6, 2020 WL

---

[2] To exhaust administrative requirements, the statute requires that a defendant first "request" that the BOP file a motion with the court for compassionate release on his behalf. Only after the defendant has exhausted the administrative rights to appeal the BOP's denial of that request, or after 30 days has passed, whichever is earlier, may the defendant then file his own motion with the court. 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (stating that remand of request for compassionate release to district court for substantive review in light of COVID-19 pandemic would be "futile" because the defendant had not complied with the exhaustion requirements under Section 3582). Boglin has complied with the requirements of § 3582(c)(1)(A). On August 16, 2020, Boglin submitted a request for compassionate release to the Warden at FCI Hazelton. The warden denied Coleman's request. (Gov't Resp. at 4.)

2992528, at *3 (E.D. Pa. June 4, 2020); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 399 (E.D. Pa. Apr. 1, 2020) (noting that the Sentencing Commission's "old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)").

A legal standard for reviewing compassionate release requests in the context of the COVID-19 pandemic may be distilled from a synthesis of the statute, the Sentencing Guidelines, and recent court decisions. Courts faced with motions for compassionate release due to COVID-19 consider: (1) whether "extraordinary and compelling" reasons exist to reduce the defendant's sentence; (2) whether the defendant is a danger to the community under § 3142(g); and (3) whether the § 3553(a) sentencing factors support a sentence reduction. *See United States v. Pabon*, 458 F. Supp. 3d 396, 300 (E.D. Pa. 2020); *United States v. Mathe*, No. 14-528, 2020 WL 3542177, at *3 (E.D. Pa. June 30, 2020); *United States v. Hannigan*, No. 19-373, 2020 WL 4015238, at *3 (E.D. Pa. July 16, 2020).

To establish "extraordinary and compelling reasons," courts have generally required defendants to show two things: (1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed. *See United States v. Somerville*, 463 F. Supp. 3d 585, 596-97 (W.D. Pa. 2020) (citing cases).

    **B.**    **Extraordinary and Compelling Reasons**

Boglin argues that he meets the standard for extraordinary and compelling reasons for compassionate release under the First Step Act due to his numerous medical conditions, which make him especially vulnerable to complications from COVID-19. The medical records accompanying Boglin's Motion as well as the Government's Response support that Boglin

suffers from Type II Diabetes, Human Immunodeficiency Virus ("HIV"), and hypertension. Boglin has also been diagnosed with and treated for schizophrenia and has a history of smoking. The Government concedes that Boglin's Type II Diabetes is recognized by the United States Centers for Disease Control and Prevention ("CDC") as increasing a person's risk of severe illness from COVID-19. *See* CENTERS FOR DISEASE CONTROL, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Mar. 2, 2021). The CDC recognizes HIV and hypertension as conditions that "might" increase someone's risk from COVID-19. *Id.*

The Government also concedes that the spread of COVID-19 can happen quickly and without notice in the prison environment. For purposes of this Motion, we will assume that Boglin has presented an extraordinary and compelling reason for his release given his Type II Diabetes. However, that is not the end of the inquiry. We are obligated to examine the section 3553(a) factors and whether Boglin would pose a danger to society if released.

### C. Sentencing Factors under § 3553(a) and Danger to the Community

Even assuming Boglin has presented an extraordinary and compelling reason for his release, the court must also consider the relevant § 3553(a) factors and whether Boglin presents a danger to the community under § 3142(g). "[B]efore granting compassionate release, a district court must consider the factors set forth in 18 U.S.C. § 3535(a) to the extent that they are applicable." *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (internal quotations and citations omitted); *see also* U.S.S.G. § 1B1.13. The sentencing factors courts consider include: the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); the "history and characteristics of the defendant," *id.*; and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the

6

offense, . . . to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant" *id.* § 3553(a)(2)(A)-(C). Courts must also consider whether the defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).

The nature and circumstances of the charges here are very serious. 18 U.S.C. § 3553(a)(1). Boglin was a convicted felon who was found to be in possession of a firearm after he shook and beat his own eight-week old infant son, resulting in the child's death. At the time of the offense, he was still on parole for a previous offense of theft of stolen property and there was less than two years between crimes. (PSR ¶¶ 34-35.) This factor weighs against Boglin's release.

With regard to the history and characteristics of the defendant, Boglin advises that he was under the influence of crack-cocaine at the time of the instant offense and had been using drugs since the age of eleven. (*See id.* ¶ 56.) During the peak of his addiction, Boglin used several bags of crack daily according to his admission to Probation. (*Id.* ¶ 56.) Weighing in favor of release, he has been treated for mental health issues including auditory hallucinations and has attended drug education programs while incarcerated. Nevertheless, Boglin is an armed career criminal with a base offense level of 33, which was then adjusted downward three levels for accepting responsibility for the crime by pleading guilty. (*Id.* ¶ 3.) His criminal record consists of offenses spanning a decade, with multiple offenses in 1993 and 1998, respectively. The record includes Boglin's guilty pleas to murder and possession of a firearm as a convicted felon (the instant offense). Taking all of the above into consideration, Boglin's history and characteristics also weigh against release.

Moreover, although Boglin has served over 70 percent of his prison sentence, serving the full sentence imposed on him is necessary to protect the safety of the community, 18 U.S.C. § 3553(a)(2)(C), to reflect the seriousness of the underlying crime, *id.* § 3553(a)(2)(A) and to afford adequate deterrence of recidivism and gun crimes by convicted felons, *id.* § 3553(a)(2)(B). *See, e.g., United States v. Spivey*, 471 F. Supp. 3d 621, 622, 624-25 (E.D. Pa. 2020) (finding full sentence necessary to serve the purpose of the section 3553(a) factors despite defendant having served approximately 75 percent of sentence at time of motion – 10.5 years of his 168-month sentence); *United States v. DeSciscio*, No. 88-239, 2020 WL 3893711, at *7 (D.N.J. July 10, 2020) (finding although defendant's crimes were committed two decades ago, "the seriousness of his crimes, the need to protect the safety of the public from even a possibility of recidivism, and the public interest in adequately deterring these types of violent crime" warranted denial of compassionate release); *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *7-8 (D.N.J. July 27, 2020) (denying compassionate release based on section 3553(a) factors although defendant only had four months remaining on sentence for being a convicted felon in possession of a firearm).

We must also assess whether Boglin poses a danger to the community. *See* 18 U.S.C. § 3142(g). Boglin has a history of recidivism, including committing the crime for which he is currently incarcerated while on parole for another crime. He has also engaged in violent behavior while incarcerated, *inter alia*, fighting with another person on two separate occasions and assaulting corrections officers on one. Given these circumstances, there is no assurance that he would be deterred from committing additional crimes if released. He remains a danger to the community.

Boglin argues that his age, fifty years, lessens the likelihood of recidivism, and his extensive rehabilitation while in custody supports a compassionate release. These factors do not outweigh the section 3553(a) and section 3142(g) factors discussed above. Although some studies have shown that recidivism may be less likely for older individuals, this does not eliminate the danger of recidivism for a known recidivist. Moreover, firearms offenders are more likely to recidivate than other groups, and even those between fifty and fifty-nine years of age were shown to have a consequential 44.8 percent rate of rearrest after release. The rate of rearrest for fifty to fifty-nine-year-old offenders with Criminal History Category VI – Boglin's category – was shown to be even higher at 64.9 percent. *See* UNITED STATES SENTENCING COMMISSION, *The Effects of Aging on Recidivism Among Federal Offenders*, at 3, A-41, A-44 (December 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last accessed Mar. 2, 2021); (PSR ¶ 3, 36.) Boglin's age does not ensure that he will not reoffend if released.

Boglin has completed several educational programs, including two drug education programs, and was selected for FCI Hazelton's honor dormitory. He also entered the Residential Drug Abuse Program ("RDAP"). Nevertheless, rehabilitation alone does not entitle Boglin to a compassionate release, particularly when the relevant section 3553(a) factors counsel against it. *See* U.S.S.G. § 1B1.13 cmt. n.3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, *by itself*, an extraordinary and compelling reason for purposes of this policy statement.") (emphasis added); *Rodriguez*, 451 F. Supp. 3d at 405 (E.D. Pa. 2020) ("[R]ehabilitation *alone* would not constitute an extraordinary and compelling reason") (emphasis in original).

For the foregoing reasons, the balance of the section 3553(a) factors and 3142(g) dangerousness determination precludes a reduction of Boglin's sentence to time served. *See,*

9

*e.g., Spivey*, 471 F. Supp. 3d at 623 (denying compassionate release despite assuming extraordinary and compelling reasons for defendant's comorbidities of sickle cell disease and diabetes mellitus type 2 based on analysis of section 3553(a) factors, including defendant's "serious and violent criminal acts"); *United States v. Parks*, No. 17-296-01, 2021 WL 354413, at *6 (E.D. Pa. Feb. 2, 2021) (assuming defendant's Type 2 diabetes presented an extraordinary and compelling circumstance but denying compassionate release based on balance of section 3553(a) factors and collecting cases).

### III.  CONCLUSION

Accordingly, Boglin's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) will be denied. An appropriate order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.